**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

SG EQUIPMENT FINANCE USA CORP.,

Plaintiff,

v.

KIMBALL ELECTRONICS, INC.,

Defendant.

Case No. 3:19-cv-00210-RLY-MPB

**DEFENDANT KIMBALL ELECTRONICS, INC.'S
ANSWER AND COUNTERCLAIM**

Defendant Kimball Electronics, Inc. ("KEI"), by counsel, respectfully submits the following Answer to the Complaint filed by plaintiff SG Equipment Finance USA Corp. ("SGEF").

### Nature of Action

This is a simple collection action to recover money damages for defendant's breach of an agreement for the provision of cloud services by failing to pay scheduled payments due thereunder to plaintiff, as the assignee of those payments. The defendant's obligations to make those payments to plaintiff are governed under the agreement's "hell or high water" provision and, therefore, the defendant's failure to make those payments indisputably entitles plaintiff, pursuant to the express terms and conditions contained in the agreement, to the full relief requested herein.

**Answer: SGEF's narrative "Nature of Action" fails to comply with the Federal Rules of Civil Procedure, which require that "[a] party must state its claim or defenses in numbered paragraphs." Fed. R. Civ. P. 10(b). KEI therefore denies any obligation to plead in response to the "Nature of Action." To the extent any such obligation exists, KEI denies all factual allegations and legal conclusions contained in the "Nature of Action" unless otherwise expressly admitted elsewhere in this answer.**

## Parties

1.     SG Equipment Finance USA Corp. ("SGEF") is a Delaware corporation with a principal place of business located at 480 Washington Boulevard, Jersey City, New Jersey 07310, and is authorized to do business in the State of Indiana.

**Answer:  KEI lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.**

2.     Kimball Electronics, Inc. ("KEI") is an Indiana corporation with a principal place of business located at 1205 Kimball Boulevard, Jasper, Indiana 47546.

**Answer:   KEI admits the allegations in Paragraph 2.**

## Jurisdiction and Venue

7.[1]     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1) in that there is diversity of citizenship between plaintiff and defendant and this is a civil action wherein the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**Answer:   KEI admits the allegations in this first Paragraph 7.**

8.[2]     Venue is proper in this Court pursuant to 28 U.S.C. 1391(a) because the defendant resides in this jurisdictional district.

**Answer:   KEI admits the allegations in this first Paragraph 8.**

---

[1] **It appears this Paragraph 3 was mis-numbered as Paragraph 7.**
[2] **It appears this Paragraph 4 was mis-numbered as Paragraph 8.**

## Allegations Common to All Causes of Action

### EPA #1

5.      On or about December 1, 2017, non-party Ariba, Inc. ("SAP") and KEI entered into Order Form for SAP Cloud Services SAP Reference No. 0220757350 (the "Order Form") for the provision of certain cloud services by SAP to KEI. A true and correct copy of the Order Form is attached hereto as Exhibit A and incorporated herein by reference.

**Answer:  KEI denies that it entered into an enforceable agreement with Ariba, Inc. ("SAP Ariba"), whether by the Order Form or otherwise, for the reasons set forth below in KEI's counterclaim (incorporated herein by reference). Alternatively, KEI avers that to the extent any enforceable agreement was reached between KEI and SAP Ariba, that SAP Ariba never performed its obligations under the purported agreement, and KEI terminated the purported agreement on January 4, 2019. KEI avers that the contents of Exhibit A speak for themselves, and denies any characterization of Exhibit A inconsistent with those contents. KEI denies that Exhibit A to SGEF's Complaint is a complete copy of the Order Form. KEI denies any remaining allegation in Paragraph 5.**

6.      KEI's payment obligations for the cloud services provided in the Order Form is set forth in the Extended Payment Addendum ("EPA #1"), dated on or about December 5, 2017, to the Order Form for the provision of additional cloud services. A true and correct copy of EPA #1 is attached hereto as Exhibit B and incorporated herein by reference.

**Answer:  KEI incorporates its denials and averments in Paragraph 5 as if fully set forth herein. KEI further avers that it executed the Extended Payment Addendum ("EPA #1") on or about November 30, 2017. KEI admits that Exhibit B is a true and accurate copy of a document entitled "Extended Payment Addendum." KEI avers that the contents of Exhibit B speak for themselves, and denies any characterization of Exhibit B inconsistent with those contents. KEI denies that it has payment obligations under the Order Form or the document described by SGEF as "EPA #1." KEI denies any remaining allegation in Paragraph 6.**

7.      EPA #1 sets forth a schedule of the amounts due from KEI to SAP under the Order Form, which includes payments due on December 28, 2018 and December 28, 2019, in the amount of $819,292.00 and $768,292.00, respectively.

**Answer:  KEI incorporates its denials and averments in Paragraphs 5-6 as if fully set forth herein. KEI denies there are any amounts due from KEI to SAP Ariba. KEI denies any remaining allegation in Paragraph 7.**

8.      EPA #1 also expressly incorporates the SAP Extended Payment and Supplemental Terms and Conditions ("EP Supplement"), a true and correct copy of which is attached hereto as <u>Exhibit C</u> and incorporated herein by reference.

**Answer:  KEI incorporates its denials and averments in Paragraphs 5-7 as if fully set forth herein. KEI avers that the contents of <u>Exhibit C</u> speak for themselves, and denies any characterization of <u>Exhibit C</u> inconsistent with those contents. KEI denies any remaining allegation in Paragraph 8.**

### EPA #2

9.      On or about December 9, 2017, the Order Form was amended by SAP and KEI pursuant to an Amendment to SAP Cloud Service Order Form SAP Reference No. 0220793167 (the "Amendment"), a true and correct copy of which is attached hereto as <u>Exhibit D</u> and incorporated herein by reference.

**Answer:  KEI incorporates its denials and averments in Paragraphs 5-8 as if fully set forth herein. KEI avers that the contents of <u>Exhibit D</u> speak for themselves, and denies any characterization of <u>Exhibit D</u> inconsistent with those contents. KEI denies that the document attached to the Complaint as <u>Exhibit D</u> purports to amend the Order Form. KEI states that <u>Exhibit D</u> purports to amend a different Order Form (Order Form 0220192499) that KEI cannot identify. KEI denies any remaining allegation in Paragraph 9.**

10.     KEI's payment obligations for the cloud services provided in the Amendment is set forth in the Extended Payment Addendum ("EPA #2" and, together with EPA #1, the "EPAs") to the Amendment. A true and correct copy of EPA #2 is attached hereto as <u>Exhibit E</u> and incorporated herein by reference.

**<u>Answer</u>:  KEI incorporates its denials and averments in Paragraphs 5-9 as if fully set forth herein. KEI avers that the contents of <u>Exhibit E</u> speak for themselves, and denies any characterization of <u>Exhibit E</u> inconsistent with those contents. KEI denies any remaining allegation in Paragraph 10.**

11.     EPA #2 sets forth a schedule of the amounts due from KEI to SAP under the Amendment, which includes payments due on December 28, 2018 and December 28, 2019, each in the amount of $85,000.00.

**<u>Answer</u>:  KEI incorporates its denials and averments in Paragraph 5-10 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 11.**

12.     Like EPA #1, EPA #2 expressly incorporates the EP Supplement.

**<u>Answer</u>:  KEI incorporates its denials and averments in Paragraph 5-11 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 12.**

## <u>Assignee of Payments to SGEF</u>

13.     In addition to setting forth in clear and unambiguous terms KEI's obligations under the Order Form, the EP Supplement also provides that SAP may assign any or all of its rights to receive payments due under the EPAs without the consent or notice to KEI.

**<u>Answer</u>:  KEI incorporates its denials and averments in Paragraphs 5-12 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 13.**

14.     With respect to any such an assignment, SAP agreed that it will not assign, delegate, transfer or convey to the assignee any obligation to perform any of SAP's duties or obligations under the Order Form.

**Answer:**   KEI incorporates its denials and averments in Paragraphs 5-13 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 14.

15.     In that regard, KEI also agreed in the EP Supplement, among other things, that:

(i)     any such assignee shall have no liability to KEI under the Order Form or otherwise with respect to any software, services, support and consulting provided by SAP in connection with the Order Form (the "SAP Products");

(ii)    KEI "shall have no, and waives any and all, rights to assert, pursue or otherwise make any claim, defense, counterclaim, setoff, or other cause of action" against the assignee for any loss or damage under the Order Form "or with respect to any SAP Products or for breach of any warranty, express or implied, as to any matter whatsoever, including but not limited to any SAP Products and service performance, functionality, features, merchantability or fitness for a particular purpose, or any indirect, incidental, special, or consequential damages or loss of business, loss of data or loss of profits";

(iii)   KEI "shall timely pay all Extended Payments and other amounts payable to Assignee under each EPA, and not in any way at any time assert against Assignee any claim, defense, counterclaim, setoff, or other cause of action that [KEI] may have against SAP"; and

(iv)    KEI "shall solely assert or otherwise pursue against SAP any claim, defense, counterclaim, setoff, or other cause of action under the [EPAs] or with respect to any SAP Products."

**Answer:**   KEI incorporates its denials and averments in Paragraphs 5-14 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 15.

16.     By written agreement, dated December 6, 2017, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest to the payment of $819,292.00 from KEI due on December 28, 2018 under EPA #1. A true and correct copy of the Assignment, dated December 6, 2017, redacted to protect confidential information, is attached hereto as <u>Exhibit F</u> and incorporated herein by reference.

**Answer:  KEI incorporates its denials and averments in Paragraphs 5-15 as if fully set forth herein. KEI lacks knowledge or information sufficient to form a belief as to whether (a) "[b]y written agreement, dated December 6, 2017, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest" or (b) the document attached as <u>Exhibit F</u> is a true and correct copy of any alleged assignment. KEI states that <u>Exhibit F</u> appears on its face to be an incomplete copy of any assignment. KEI denies that SAP Ariba had any rights to assign to SGEF, and denies that a payment of $819,292.00 was due on December 28, 2018.**

**KEI further avers that, to the extent KEI and SAP Ariba entered into an enforceable agreement, the right of assignment by SAP Ariba was limited to SAP SE or its affiliates (an entity in which SAP SE owned more than fifty percent (50%) of the shares or voting rights). SGEF is not an affiliate of SAP SE and not a permissible assignee. KEI denies any remaining allegation in Paragraph 16.**

17.     By letter dated January 10, 2018, SAP notified KEI of SAP's assignment to SGEF of its right, title and interest in and to the $819,292.00 payment due on December 28, 2018 from KEI under EPA #1. A true and correct copy of SAP's January 10, 2018 letter to KEI is attached hereto as <u>Exhibit G</u> and incorporated herein by reference.

**Answer: KEI admits it received the January 10, 2018 letter from SAP Ariba attached as <u>Exhibit G</u>. KEI denies any remaining allegation in Paragraph 17.**

18.     By written Assignment, dated December 19, 2017, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest to the payment of $85,000.00 from KEI due on December 28, 2018 under EPA #2. A true and correct copy of the Assignment, dated December 6, 2017, redacted to protect confidential information, is attached hereto as <u>Exhibit H</u> and incorporated herein by reference.

**<u>Answer</u>:  KEI incorporates its denials and averments in Paragraphs 5-15 as if fully set forth herein. KEI lacks knowledge or information sufficient to form a belief as to whether (a) "[b]y written Assignment, dated December 19, 2017, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest," or (b) the document attached as <u>Exhibit H</u> is a true and correct copy of any alleged assignment. KEI denies that SAP Ariba had any rights to assign to SGEF, and denies that there was a "payment of $85,000.00 from KEI due on December 28, 2018 under EPA #2."**

**KEI further avers that, to the extent KEI and SAP Ariba entered into an enforceable agreement, the right of assignment by SAP Ariba was limited to SAP SE or its affiliates (an entity in which SAP SE owned more than fifty percent (50%) of the shares or voting rights). SGEF is not an affiliate of SAP SE and not a permissible assignee. KEI denies any remaining allegation in Paragraph 18.**

19.     By letter dated January 10, 2018, SAP notified KEI of SAP's assignment to SGEF of its right, title and interest in and to the $85,000.00 payment due on December 28, 2018 from KEI under EPA #2. A true and correct copy of SAP's January 10, 2018 letter to KEI is attached hereto as <u>Exhibit I</u> and incorporated herein by reference.

**<u>Answer</u>: KEI admits it received the January 10, 2018 letter from SAP Ariba attached as <u>Exhibit I</u>. KEI denies any remaining allegation in Paragraph 19.**

20.     By written Assignment, dated December 11, 2018, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest to the payment of $85,000.00 from KEI due on December 28, 2019 under EPA #2. A true and correct copy of the Assignment, dated December 11, 2018, redacted to protective confidential information is attached hereto as <u>Exhibit J</u> and incorporated herein by reference.

**<u>Answer</u>:   KEI incorporates its denials and averments in Paragraphs 5-15 as if fully set forth herein. KEI lacks knowledge or information sufficient to form a belief as to whether (a) "[b]y written Assignment, dated December 11, 2018, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest," or (b) the document attached as <u>Exhibit I</u> is a true and correct copy of any alleged assignment. KEI denies that SAP Ariba had any rights to assign to SGEF, and denies that there was a "payment of $85,000.00 from KEI due on December 28, 2019 under EPA #2."**

**KEI further avers that, to the extent KEI and SAP Ariba entered into an enforceable agreement, the right of assignment by SAP Ariba was limited to SAP SE or its affiliates (an entity in which SAP SE owned more than fifty percent (50%) of the shares or voting rights). SGEF is not an affiliate of SAP SE and not a permissible assignee. KEI denies any remaining allegation in Paragraph 20.**

21.     By letter dated December 11, 2018, SAP notified KEI of SAP's assignment to SGEF of its right, title and interest in and to the $85,000.00 payment due on December 28, 2019 from KEI under EPA #2. A true and correct copy of SAP's December 11, 2018 letter to KEI is attached hereto as <u>Exhibit K</u> and incorporated herein by reference.

**<u>Answer</u>:   KEI admits that it received the December 11, 2018 letter from SAP Ariba attached as <u>Exhibit K</u>. KEI denies any remaining allegation in Paragraph 21.**

22.     By written Agreement, dated December 28, 2018, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest to the payment of $768,292.00 from KEI due on December 28, 2019 under EPA #1. A true and correct copy of the Assignment, dated December 28, 2018, redacted to protect confidential information, is attached hereto as <u>Exhibit L</u> and incorporated herein by reference.

**Answer:   KEI incorporates its denials and averments in Paragraphs 5-15 as if fully set forth herein. KEI lacks knowledge or information sufficient to form a belief as to whether (a) "[b]y written Agreement, dated December 28, 2018, SAP sold, assigned and transferred to SGEF, among other things, all of SAP's right, title and interest," or (b) the document attached as <u>Exhibit L</u> is a true and correct copy of any alleged assignment. KEI denies that SAP Ariba had any rights to assign to SGEF, and denies that there is a "payment of $768,292.00 from KEI due on December 28, 2019 under EPA #1."**

**KEI further avers that, to the extent KEI and SAP Ariba entered into an enforceable agreement, the right of assignment by SAP Ariba was limited to SAP SE or its affiliates (an entity in which SAP SE owned more than fifty percent (50%) of the shares or voting rights). SGEF is not an affiliate of SAP SE and not a permissible assignee. KEI denies any remaining allegation in Paragraph 22.**

23.     By letter dated December 28, 2018, SAP notified KEI of SAP's assignment to SGEF of its right, title and interest in and to, the $768,292.00 payment due on December 28, 2019 from KEI under EPA #1. A true and correct copy of SAP's December 28, 2018 letter to KEI is attached hereto as <u>Exhibit M</u> and incorporated herein by reference.

**Answer:   KEI admits that it received the December 28, 2018 letter from SAP Ariba attached as <u>Exhibit M</u>. KEI denies any remaining allegation in Paragraph 23.**

## <u>KEI's Default Under the EPAs</u>

24.     The EP Supplement also describes events constituting events of default thereunder, which includes a failure to pay in full any payment under any of the EPAs within 30 calendar days of its due date.

**Answer:   KEI incorporates its denials and averments in Paragraphs 5-23 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 24.**

25.     The EP Supplement further provides that upon the occurrence of any event of default, SGEF is entitled to, among other things, declare all unpaid payments due under all EPAs (whether past due or scheduled to be paid), interest and other amounts then outstanding under the EPAs to be, immediately due and payable in full without presentment, demand protect or other notice of any kind.

**Answer:   KEI incorporates its denials and averments in Paragraphs 5-24 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 25.**

26.     Pursuant to the terms of the EP Supplement, KEI agreed to pay all legal and other fees and expenses incurred by SGEF with respect to its enforcement thereof.

**Answer:   KEI incorporates its denials and averments in Paragraphs 5-25 as if fully set forth herein. KEI denies any remaining allegation in Paragraph 26.**

## Count I
## Breach of Contract

27.     SGEF repeats and realleges each of the foregoing paragraphs as though fully set forth at length herein.

**Answer:   KEI incorporates by reference its responses to the allegations contained in the foregoing paragraphs as if fully set forth herein.**

28.     KEI breached the Order Form by having failed to remit a payment of $819,292.00 due on December 28, 2018 under EPA #1.

**Answer:   KEI incorporates its denials and averments in Paragraphs 5-26 as if fully set forth herein. KEI further avers that SGEF has failed to plead sufficiently, and cannot prove: (a) that SGEF actually owns any contract right that it may assert against KEI; (b) that any assignment by which SGEF makes a claim against KEI is valid; or (c) the satisfaction of conditions precedent to any payment by KEI, including that SAP Ariba had an enforceable agreement with KEI or that, if there was such an agreement, SAP Ariba performed its obligations. KEI denies any remaining allegation in Paragraph 28.**

29.     SGEF has made due demand upon KEI for payment of the outstanding payment due under EPA #1, but despite such demand, KEI has failed and/or refused to honor its obligations. True and correct copies of SGEF's demand letters, through its counsel, are collectively attached hereto as <u>Exhibit N</u> and incorporated herein by reference.

**<u>Answer</u>: KEI admits that it received the SGEF letters attached as <u>Exhibit N</u>. KEI denies it has the obligations claimed by SGEF. KEI denies any remaining allegation in Paragraph 29.**

30.     By virtue of such failure, and pursuant to SGEF's cross-default rights and remedies under EP Supplement, SGEF has declared that the $768,292.00 payment due on December 28, 2019 under EPA #1 shall also be immediately due and payable by KEI.

**<u>Answer</u>: KEI admits that SGEF has demanded payment from KEI. KEI denies any remaining allegation in Paragraph 30.**

31.     Accordingly as a direct and proximate result of KEI's breach of the Order Form, SGEF has been damaged in an amount of no less than $1,687,584.00, plus accrued and accruing interest, late fees, costs, expenses, attorneys' fees, and any and all other amounts due thereunder.

**<u>Answer</u>: KEI denies the allegations in Paragraph 31.**

**<u>Count II</u>**
**Breach of Contract**

32.     SGEF repeats and realleges each of the foregoing paragraphs as though fully set forth at length herein.

**<u>Answer</u>: KEI incorporates by reference its responses to the allegations contained in the foregoing paragraphs as if fully set forth herein.**

33.     KEI breached the Order Form, as amended, by having failed to remit SGEF payment of $85,000.00 due on December 28, 2018 under EPA #2.

**Answer:   KEI incorporates its denials and averments in Paragraphs 5-25 as if fully set forth herein. KEI further avers that SGEF has failed to plead sufficiently, and cannot prove: (a) that SGEF actually owns any contract right that it may assert against KEI; (b) that any assignment by which SGEF makes a claim against KEI is valid; or (c) the satisfaction of conditions precedent to any payment by KEI, including that SAP Ariba had an enforceable agreement with KEI or that, if there was such an agreement, SAP Ariba performed its obligations under said agreement. KEI denies any remaining allegation in Paragraph 33.**

34.     SGEF has made due demands upon KEI for payment for the outstanding payment due under EPA #2, but despite such demands, KEI has failed and/or refused to honor its obligations. See Exhibit J.

**Answer:   KEI admits that SGEF has demanded payment from KEI. KEI denies that it has the obligations claimed by SGEF. KEI denies any remaining allegation in Paragraph 34.**

35.     By virtue of such failure, and pursuant to SGEF's cross-default rights and remedies under the EP Supplement, SGEF has declared that the $85,000.00 payment due on December 28, 2019 under EPA #2 shall also be immediately due and payable by KEI.

**Answer:   KEI admits that SGEF has demanded payment from KEI. KEI denies any remaining allegation in Paragraph 35.**

36.     Accordingly, as a direct and proximate result of KEI's breach of the Order Form, as amended, SGEF has been damaged in an amount of no less than $170,000, plus accrued and accruing interest, late fees, costs, expenses, attorneys' fees, and any and all other amounts due thereunder.

**Answer:   KEI denies the allegations contained in Paragraph 36.**

## DEFENSES

1.      SGEF has failed to state a claim upon which relief may be granted.

2.      SGEF has failed to join a necessary party, Ariba, Inc. ("SAP Ariba").

3.      SGEF has failed to plead sufficiently, and cannot prove, that SGEF owns any right that it may assert against KEI.

4.      SGEF has failed to plead sufficiently, and cannot prove, that any assignment by which SGEF makes a claim against KEI is valid.

5.      SGEF has failed to plead sufficiently, and cannot prove, the satisfaction of conditions precedent to any payment by KEI—namely, that SAP Ariba had an enforceable agreement with KEI or that SAP Ariba performed its obligations under said agreement.

6.      The assignment and "hell-or-high-water" terms upon which SGEF relies are unenforceable, as the contract between KEI and SAP Ariba—if there was an enforceable contract between them—was for personal services.

WHEREFORE, Kimball Electronics, Inc., by counsel, respectfully requests that SG Equipment Finance USA Corp. take nothing by way of its Complaint, and that the Court award KEI the costs of this action and all other relief just and proper.

## <u>COUNTERCLAIM FOR DECLARATORY RELIEF</u>

Kimball Electronics, Inc. ("KEI"), for its counterclaim against SG Equipment Finance USA Corp. ("SGEF"), states and avers as follows:

1.      KEI is a leading manufacturer of durable goods electronics serving a variety of industries on a global scale. It employs more than 6,500 workers in facilities around the world. Its primary customers are in the medical, industrial, automotive, and public safety industries.

2.      KEI's products are complex. One of KEI's products may be comprised of hundreds of individual parts—including resistors, transistors, and capacitors—that KEI sources from around the world to meet its manufacturing needs. Those individual parts then may be assembled, for example, into a single board:



3.      In order to source and procure those individual parts in the timely, cost-effective manner necessary to meet customer needs, KEI's seventy-five buyers employ sophisticated strategies, aided substantially by software designed specifically for that complicated task.

4.      On an annual basis, KEI's buyers are responsible for purchasing approximately $750 million worth of parts—acquiring more than 70,000 unique components from a combined 3,000 suppliers around the world.

5.      For some time, KEI has relied principally on two software programs to source parts and manage its supply chain: Quote Win and Fusion Ops. Both are add-on tools to the core SAP enterprise resource planning (or ERP) system that KEI uses to transact its materials purchasing, quoting, and supply chain functions.

6.      Quote Win allows KEI's buyers to upload complex bills of materials, select in one screen which suppliers are to solicit quotes, and send a request for quote to the selected suppliers. It allows suppliers to access the RFQ, input pricing and component information, and then submit their response to KEI for review. Then, once the supplier information is provided, KEI's team can download a costed bill of material for analysis and action.

7.      Fusion Ops provides KEI's buyers a portal in which they manage KEI's purchasing functions. Those functions include purchase requisition management (from

one to multiple suppliers), purchase order issuance and management, and determining the hierarchy of purchasing needs.

8.     In 2017, KEI was looking to replace Quote Win and Fusion Ops with a single software solution that would make KEI's complex supply chain management more efficient and less costly, including by adding the ability to purchase direct from manufacturers and eliminate middle-man distributors. That desire led KEI into discussions with Ariba, Inc. ("SAP Ariba").

9.     As noted above, KEI's products often contain hundreds of component parts. A bill of materials for a single KEI product (the list of subassemblies, and the parts necessary for each, that go into the final product) routinely has multiple levels.

10.    Each individual part, in each level, could have multiple potential suppliers. KEI's buyers use Quote Win to communicate with, and obtain quotes from, each potential supplier. KEI's buyers then use Fusion Ops to communicate with its chosen suppliers, to manage the purchase and delivery of parts.

11.    Between June and November 2017, KEI demonstrated its existing systems to SAP Ariba personnel, so that SAP Ariba could evaluate KEI's needs, understand KEI's use of Quote Win and Fusion Ops, and propose an effective replacement solution.

12.    At multiple meetings throughout 2017, SAP Ariba—led by its Account Executive, Jeremy Harrell, and Director of Solution Consulting, Kerry Persons—represented that SAP Ariba offered cloud service options that would allow KEI's buyers

to do what they already were doing through Quote Win and Fusion Ops, but in a far more efficient and cost-effective manner, including by adding the ability to purchase direct from manufacturers and eliminate middle-man distributors.

13. For example, SAP Ariba represented in a June 2017 presentation that it possessed the capability to support multi-level bills of materials of the kind used by KEI. That functionality would be necessary to replace Quote Win.

14. SAP Ariba's Jeremy Harrell also represented on September 27, 2017, that its cloud services would allow KEI to purchase directly from certain manufacturers, including Texas Instruments. At the time, KEI had to purchase parts from Texas Instruments through a middle-man distributor. SAP Ariba represented that its cloud services would allow KEI to purchase direct from Texas Instruments—because, SAP Ariba said, Texas Instruments also was utilizing SAP Ariba's cloud services. If true, the ability to eliminate the Texas Instruments middle-man distributor would generate significant cost savings for KEI.

15. SAP Ariba also represented that other customers successfully had implemented its services to source "direct" materials (parts that go into products), and not just "indirect" materials (everyday office-use items, such as computers, pencils, notepads, etc.).

16. As KEI learned later, none of these representations was true. In 2017, SAP Ariba's services did not possess the capability to handle multi-level bills of materials.

Texas Instruments and other manufacturers did not use SAP Ariba's cloud services in such a way that would allow KEI to purchase directly from them. And KEI was unable to locate other SAP Ariba customers who had managed to implement SAP Ariba services for "direct" purchasing without significant problems arising. In sum, SAP Ariba was wholly unsuited and incapable of providing complex and multi-level sourcing and procurement services to a manufacturer of durable goods electronics such as KEI.

17.     Throughout 2017, SAP Ariba performed multiple "demonstrations" to convince KEI it should purchase SAP Ariba's services. In June 2017, KEI asked SAP Ariba whether it was possible to use KEI's actual data to provide proof of concept that SAP Ariba's services would work as represented. SAP Ariba said no, and that it would provide product demonstrations utilizing only "dummy" data prepared by SAP Ariba. Using that "dummy" data, SAP Ariba's demonstrations appeared to show that its products would be an effective replacement for Quote Win and Fusion Ops.

18.     During those 2017 demonstrations, SAP Ariba repeatedly represented to KEI that its cloud services effectively would replace—indeed, expand upon—the functions performed by Quote Win and Fusion Ops. KEI reasonably relied on SAP Ariba's representations concerning the capabilities of SAP Ariba's own services.

19.     SAP Ariba understood from its many conversations with KEI personnel that a partial solution would be no solution at all; SAP Ariba would have to provide a total

replacement for KEI's use of Quote Win and Fusion Ops. SAP Ariba never qualified its services' ability to provide that total solution—to the contrary, it repeatedly represented that it could provide "end-to-end process management."

20.     The discussions between SAP Ariba and KEI ultimately led KEI, on December 1, 2017, to execute an "Order Form for SAP Cloud Services SAP Reference No. 0220757350" ("Order Form-350") A true and accurate copy of that Order Form, with its Schedules A-E, is attached as **Exhibit 1**.

21.     Through Order Form-350, SAP Ariba purported to sell KEI five different "SAP Cloud Service[s]": (1) "SAP ARIBA STRATEGIC SOURCING SUITE"; (2) "SAP ARIBA SUPPLY CHAIN COLLAB FOR BUYERS"; (3) "SAP ARIBA BUYING A INVOICING, PARTNER ED"; (4) "SAP ARIBA SUPPLY CHAIN, FORECAST ADD-ON"; (5) "SAP ARIBA COMMERCE AUTOMATION, PARTNR ED" (together, the "Cloud Services").

22.     Nowhere in Order Form-350 did SAP Ariba purport to describe what the Cloud Services are, what they were intended to do, how one might determine whether SAP Ariba had provided the Cloud Services, or how one might determine whether SAP Ariba had breached a promise related to any of the Cloud Services.

23.     Schedule E to Order Form-350 sets forth "General Terms and Conditions for SAP Cloud Services" ("General Terms and Conditions"). The General Terms and Conditions include a warranty, entitled "Good Industry Practices," that states in

relevant part: "SAP [Ariba] warrants that it will provide the Cloud Service[s]: (a) in substantial conformance with the Documentation."

24.     "Documentation" is a defined term in the General Terms and Conditions: "SAP's then-current technical and functional documentation as well as any roles and responsibilities descriptions, if applicable, for the Cloud Service which is made available to Customer with the Cloud Service."

25.     At no time prior to KEI's December 1, 2017 execution of Order Form-350 did SAP Ariba provide KEI with "Documentation," as that term is used in the General Terms and Conditions.

26.     Through Order Form-350, SAP Ariba purported to sell KEI consulting services in the form of "SAP ARIBA STRATEGIC SOURCING SUITE SETUP" ("Consulting Services").

27.     Nowhere in Order Form-350 did SAP Ariba purport to describe what the Consulting Services include, what they were intended to do, how one might determine whether SAP Ariba had provided the Consulting Services, or how one might determine whether SAP Ariba had breached a promise related to the Consulting Services.

28.     Schedule A to Order Form-350 provides "SAP Consulting Services Supplemental Terms and Conditions" ("Consulting Terms"). The Consulting Terms include a warranty, entitled "Consulting Services Warranty," that states in relevant part: "SAP warrants that for ninety (90) days following provision of the Consulting

Services the Deliverables will materially conform with the specifications for that Deliverable in accordance with the respective Service Description or Scope Document …."

29.     "Deliverables" is a defined term in the Consulting Terms: "those specific work products or tangible results which are explicitly identified as 'Deliverable' under the applicable Order Form." Order Form-350 identified no such "Deliverable."

30.     "Service Description" is a defined term in the Consulting Terms: "pre-defined descriptions of services found at http://www.sap.com/corporate-en/about/resources/service-descriptions/index.html in effect as of the Order Form Effective Date." The consulting services document available at that site states, in relevant part, that "SAP will perform Services as further defined in the Scope Document to assist the Licensee with Licensee's Project."

31.     "Scope Document" is a defined term in the Consulting Terms: "the document that is provided with and becomes part of the applicable Order Form which further defines the Consulting Services to be provided and other engagement specifics."

32.     At no time prior to KEI's December 1, 2017 execution of Order Form-350 did SAP Ariba provide KEI with a "Scope Document," as that term is used in the Consulting Terms.

33.     At no point did SAP Ariba provide any information describing what, exactly, it was promising to provide KEI in conjunction with the Consulting Services.

34. Through Order Form-350, SAP Ariba purported to sell KEI Cloud Services (for a total of $3,841,460) and Consulting Services (for an additional $51,000). But Order Form-350 actually promised nothing. And nothing is exactly what SAP Ariba provided to KEI.

35. Beginning in January 2018, KEI attempted to implement what it thought it had purchased from SAP Ariba—a service that would allow KEI to retire its Quote Win and Fusion Ops systems. By December 2018, SAP Ariba finally confirmed to KEI that SAP Ariba's services would not—indeed, never could have—replaced Quote Win and Fusion Ops.

36. Over the course of 2018, SAP Ariba revealed the following, among other failings: (1) SAP Ariba did not offer a service that could process KEI's multi-level bills of materials; (2) a number of functions performed by Quote Win and Fusion Ops could not be performed by SAP Ariba's services, absent a number of "workarounds" or "future developments" that would have to be designed, tested, and then implemented (if they actually worked); (3) key KEI parts manufacturers, such as Texas Instruments, did not transact business with their customers by using SAP Ariba's network; and (4) KEI did not own, and would have to purchase for an additional $103,684, software necessary to implement even the limited service SAP Ariba claimed it could provide.

37. As these issues (and others) were identified, SAP Ariba continually reassured KEI that each could and would be addressed by the time KEI intended to "go live" with

SAP Ariba's services. SAP Ariba represented that each issue would be addressed so long as KEI continued to work with SAP Ariba's recommended integration partner, Intrigo (to whom KEI wound up paying roughly a half-million dollars), to create "workarounds." SAP Ariba's assurances continued as late as a December 7, 2018 meeting at KEI.

38.     KEI reasonably relied on the assurances SAP Ariba made throughout 2018. SAP Ariba had far greater knowledge and experience regarding its software services, and specifically what was and was not possible with respect to the services it purportedly sold to KEI.

39.     In the weeks after that December 7, 2018 meeting, KEI considered whether it should continue working with SAP Ariba. By the end of December 2018, KEI determined that doing so would be fruitless. The "services" SAP Ariba claimed to be providing KEI would not be able to eliminate KEI's reliance on Quote Win and Fusion Ops. They would not enhance KEI's capabilities supply chain management process in ways that led to greater efficiencies. And they would provide no functionality at all absent any number of "workarounds" (if the "workarounds" even worked).

40.     Indeed, SAP Ariba's proposed "workarounds" would have required KEI to hire additional personnel and increase the number of steps necessary to procure and manage the supply of parts. In sum, had KEI attempted to "go live" with SAP Ariba, KEI's supply chain management likely would have been thrown into disarray.

41.     On January 4, 2019, KEI notified SAP Ariba that, effective immediately, it was terminating Order Form-350. A true and correct copy of that January 4, 2019 letter is attached as **Exhibit 2**.

42.     On January 10, 2019, SAP Ariba responded to KEI's termination by stating that SAP Ariba "reject[ed] the assertion that Kimball has any rights to under the agreement to terminate." A true and correct copy of SAP Ariba's January 10, 2019 letter is attached as **Exhibit 3**.

43.     As set forth in its Complaint, SGEF claims that SAP Ariba assigned to SGEF the right to payments allegedly due from KEI.

44.     If KEI and SAP Ariba did not have an enforceable agreement, because there was no meeting of the minds between them, then SAP Ariba would have had no rights to assign to anyone—including SGEF.

45.     If KEI and SAP Ariba did not have an enforceable agreement, because SAP Ariba fraudulently induced KEI to enter into a contract, then SAP Ariba would have no rights to assign to anyone—including SGEF.

46.     If KEI and SAP Ariba had an enforceable agreement, KEI's payment obligations under that agreement never would have arisen due to SAP Ariba's failure to perform.

47.     If KEI and SAP Ariba had an enforceable agreement requiring payment from KEI, that agreement would have been governed by the General Terms and Conditions.

Paragraph 12.6 of the General Terms and Conditions would have restricted SAP Ariba's ability to assign its rights under any agreement with KEI—specifically, SAP Ariba could not assign its rights to anyone other than "SAP SE or any of its Affiliates."

48.    "Affiliate" is a defined term in the General Terms and Conditions: "any legal entity in which a party [SAP Ariba or KEI], directly or indirectly, holds more than fifty percent (50%) of the entity's shares or voting rights. Any legal entity will be considered an Affiliate as long as that interest is maintained."

49.    SGEF is not an "Affiliate" of SAP SE, as that term is defined by the General Terms and Conditions.

50.    If KEI and SAP Ariba had an enforceable agreement, that agreement validly was terminated on January 4, 2019.

51.    As set forth in its Complaint, SGEF asserts a right to payment pursuant to a document purporting to amend Order Form 0220192499 ("Order Form-499"). KEI has no record of the existence of any Order Form-499 between KEI and SAP Ariba. If such an order form did exist, any claim for payment based upon it would suffer from the same deficiencies set forth above with respect to any claim for payment based on Order Form-350.

## COUNT I – DECLARATORY JUDGMENT

52.     KEI incorporates by reference the allegations set forth in Paragraphs 1-51.

53.     An actual controversy exists between the parties with respect to whether any alleged agreement between KEI and SAP Ariba was sufficiently definite to be enforceable.

54.     An actual controversy exists between the parties with respect to whether any alleged agreement between KEI and SAP Ariba was void because it was procured by SAP Ariba's fraudulent representations and material omissions of fact.

55.     An actual controversy exists as to whether SAP Ariba possessed or possesses any right to payment from KEI that it validly could assign to SGEF.

56.     If KEI and SAP Ariba did have an enforceable agreement, an actual controversy exists between the parties with respect to whether KEI's January 4, 2019 termination was effective.

57.     If KEI and SAP Ariba did have an enforceable agreement, and if SAP Ariba validly could assign any payment right to SGEF, an actual controversy exists between the parties with respect to any amount owed to SGEF.

58.     An actual controversy exists between the parties with respect to whether there actually was any Order Form-499, pursuant to which KEI might owe any payment or, alternatively, whether any claim for payment premised on Order Form-499 suffers from the same deficiencies as any claim for payment premised on Order Form-350.

59.     A declaratory judgment by this Court will resolve an actual dispute between the parties.

## PRAYER FOR RELIEF

WHEREFORE, KEI, by counsel, respectfully requests that this Court enter a judgment declaring:

1.     KEI and SAP Ariba had no enforceable agreement, rendering any purported assignment by SAP Ariba to SGEF a nullity;

2.     Any purported assignment by SAP Ariba to SGEF is invalid, because SAP SE does not own more than 50 percent of SGEF's shares or voting rights;

3.     SAP Ariba has not possessed, and does not possess today, any right to payment from KEI that it validly could assign to SGEF;

4.     If KEI and SAP Ariba did have an enforceable agreement, KEI's January 4, 2019 termination was effective;

5.     If KEI and SAP Ariba did have an enforceable agreement, and if SAP Ariba validly could assign any payment right to SGEF, the amount owed by KEI to SGEF is not the amount claimed by SGEF;

6.     There was no Order Form-499, pursuant to which KEI might owe any payment or, alternatively, any claim for payment based upon such order form fails for the same reasons as any such claim premised on Order Form-350.

## DEMAND FOR JURY TRIAL

KEI hereby demands a trial by jury, as to all issues so triable.

Respectfully submitted,

Date: <u>November 26, 2019</u>  <u>*s/ Michael R. Limrick*</u>
        Andrew W. Hull (11218-49)
        awhull@hooverhullturner.com
        Michael R. Limrick (23047-49)
        mlimrick@hooverhullturner.com
        HOOVER HULL TURNER LLP
        111 Monument Circle, Suite 4400
        P.O. Box 44989
        Indianapolis, IN  46244-0989
        Tel: (317) 822-4400
        Fax: (317) 822-0234

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a copy of the forgoing has been served on this

26th day of November, 2019, upon all counsel of record via the court's CM/ECF system.

        <u>*s/ Michael R. Limrick*</u>
        Attorney for Defendant